In the Matter of the Estate of HENRIETTA REDMOND, Deceased.

[No. 10,971 (N. S.).]

Inheritance Tax—Exemptions—Adopted Child.—The claimant for exemption in this case is found to be "a child adopted" or "child to whom . . . decedent stood in the relation of parent," within the meaning of sections 5 and 7 of the inheritance tax law.

Albert H. Elliott, for the state.

Sullivan & Sullivan and Theodore J. Roche, for Henrietta. Redmond Johnson, claiming exemption.

COFFEY, J. Upon the statement of facts, conceded to be substantially correct, there is no doubt in the mind of this court that Henrietta Redmond Johnson held the relation of child toward the deceased, mutually acknowledged, in the letter and spirit of the statute of 1905.

The admitted facts are as follows:

Henrietta Redmond Johnson was born in 1879. Her birth name was Sheehan, and she was a niece of James Redmond, the deceased husband of the above-named Henrietta Redmond, deceased. When about thirteen months of age she was taken into the family of James and Henrietta Redmond, and was reared, maintained, supported, educated and trained by said James and Henrietta Redmond up to the time of the death of James Redmond in 1891. She was also adopted by said James Redmond, with the consent of his wife, some time before his death. At the time of the death of said James Redmond, said Henrietta Redmond Johnson was of the age of twelve years or thereabouts. Thereafter, she continued to live with the above-named deceased, who supported, maintained, clothed and educated her. She was sent to school and to the convent by said deceased, who paid as much as five hundred dollars a year for her education and maintenance at the convent. During the vacation period she always returned to the home of said deceased. Said deceased always gave to said Henrietta Redmond Johnson the care and protection of a mother, and exhibited the same interest in her welfare that her mother did as a child. This is corroborated by the letter of said deceased, written to the Mother Superior of the convent with reference to the choice of her vocation in life. Although christened Henrietta Sheehan, said Henrietta Redmond Johnson was from her very infancy up to the time of her marriage known as Henrietta Redmond. She always acquiesced in the right of deceased to control her training, and gave her the obedience and respect which a child ordinarily yields to her mother. After she had grown up she attended to the household duties almost entirely, and took care of deceased, never, however, receiving any salary or wages, but was maintained, supported and clothed by said deceased and given money by said deceased

for incidental expenses. This relation continued between said Henrietta Redmond Johnson and said deceased, up to the time of her marriage on June 1, 1908. In connection with her marriage, the following facts are significant:

Her fiancé made known to said deceased his intention to marry Henrietta Redmond Johnson, and asked her consent thereto. Said deceased made objection to said fiancé, upon religious grounds, with the result that he agreed to embrace her religion. He was subsequently baptized therein, and said deceased stood sponsor for him at that time. Said deceased participated in all the arrangements for the wedding, provided the trousseau, and directed the wording of the invitations by which the guests were invited to be present at the marriage of "her daughter, Henrietta Frances."

After her marriage said Henrietta Redmond Johnson continued to live with deceased for a short period, but subsequently left, owing to a disagreement between her husband and said deceased. Nevertheless, she continued to visit said deceased and to maintain toward her the same form of intimate relations, as far as was possible under the changed conditions. The only difficulty between deceased and Henrietta Redmond Johnson occurred in the year 1898, when, as the result of an unfounded accusation made by deceased against Henrietta Redmond Johnson, the latter left home for a period of about two months. The controversy was then settled amicably between the parties, and Henrietta Redmond Johnson went back to live with said deceased, and remained with her for more than ten years, in the same relation which had theretofore existed between them.

In her will, which has been admitted to probate herein, deceased left the bulk of her estate, after the payment of a few specific legacies, to Henrietta Redmond Johnson and her children.

It should seem conclusively from this statement that the deceased and Henrietta Redmond Johnson, for not less than ten years prior to the death of decedent, stood in the mutual relation of parent and child.

The transient disturbance and disagreement was a mere domestic dissension and not to be counted against the con-

tinuity of the relation any more than if they were by nature mother and daughter. It was a mere incident not calculable in the domestic relations.

The reciprocal relations so long subsisting could not be affected by any temporary breach or casual difference or estrangement. Such occurrences are common, even in the best regulated families, and import nothing, as in this case, according to the statement, except that the parent had some objections to the choice by the child of a husband or wife, which objection here was subsequently overcome by the submission of the fiancé to the conditions imposed by the foster mother, and she stood sponsor for him at his baptism.

There could not be a clearer case.

In addition she made all the arrangements for the wedding, issued the invitations for the guests at the marriage of "her daughter Henrietta Frances."

Apart from the statutory adoption by the husband of deceased, the circumstances show and the direct evidence is adequate that the child was treated as a daughter and was regarded as such by the deceased and always occupied such status, being obedient to and dependent upon her foster parents, and that is all that the statute requires, and there can be no higher proof of mutual acknowledgment. This is the sum of all the authorities.

This court has read all of the cases cited and quoted by counsel, but there is not one of them more cogent in favor of the claimant than the case at bar, and her contention is sustained on all points.

The amount paid as commission on sale of real estate should be allowed as a deduction from the expenses of administration.

---

*As to Exemption from the Inheritance Tax* of adopted children or persons to whom the decedent stood as parent, see Ross on Inheritance Taxation, pp. 180–184.